IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| GABRIEL EVAN ANDREWS, | : |
| Plaintiff, | : |
| v. | : CASE NO. 3:14-CV-29-MSH |
| | : Social Security Appeal |
| CAROLYN W. COLVIN, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

## ORDER

Gabriel Evan Andrews, referred to herein as "Plaintiff," filed an application for disability insurance benefits under the Social Security Act on August 6, 2010. He alleged that he became disabled to work on April 8, 2010 as a result of injuries to his back and neck suffered in an automobile accident. His application was denied initially on February 1, 2011, and denied on reconsideration on March 29, 2011. On May 18, 2011 he filed his written request for a hearing before an administrative law judge (ALJ) as provided for in 20 C.F.R. 404.929 *et seq.* The hearing before the ALJ was conducted on April 18, 2012. Plaintiff appeared with his attorney and testified at the hearing. Testimony was also taken from a vocational expert (VE). On September 18, 2012 the ALJ issued her "partially favorable" decision finding Plaintiff to have been disabled from work from the alleged onset date of April 8, 2010 through April 30, 2011 but to have the residual functional capacity (RFC) to engage in light work as defined in 20 C.F.R. 404.1567(b)

with additional restrictions commencing May 1, 2011. (Tr. 20-44.) The Appeals Council (AC) denied review on December 17, 2013. (Tr. 17-19, 4-9). Having exhausted the administrative remedies available to him under the Act, Plaintiff filed this action on March 20, 2014 seeking judicial review of the decision by the Commissioner of Social Security to deny him disability insurance benefits after April 30, 2011.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id*.

The Plaintiff bears the initial burden of proving that he/she is unable to perform his/her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). The Plaintiff's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).[2] A Plaintiff seeking Social Security disability benefits must demonstrate that he/she suffers from an impairment that prevents him/her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a Plaintiff must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 *et seq*.

Under the Regulations, the Commissioner uses a five-step procedure to determine if a Plaintiff is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the Plaintiff is working. *Id.* If not, the Commissioner determines whether the Plaintiff has an impairment which prevents the performance of basic work activities. *Id.* Second, the Commissioner determines the severity of the Plaintiff's impairment or combination of

---

2   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

impairments.  *Id.*  Third, the Commissioner determines whether the Plaintiff's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the "Listing").  *Id.*  Fourth, the Commissioner determines whether the Plaintiff's residual functional capacity can meet the physical and mental demands of past work.  *Id.*  Fifth and finally, the Commissioner determines whether the Plaintiff's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Id.*  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

Where the Plaintiff is found disabled at any point in the above analysis, the Commissioner must also determine if the disability continues through the date of the decision.  To do this, the Commissioner has established an eight step sequential evaluation process for Title II (DIB) claims and a seven step sequential evaluation process for Title XVI (Supplemental Security Income or SSI) claims, the difference being that performing substantial gainful activity is not relevant to determine whether disability continues under Title XVI.  20 CFR § 416.994(b)(5).  Benefits may be terminated only if a claimant has experienced medical improvement to the point of having a residual functional capacity sufficient to permit work at jobs available in the national economy.

Medical improvement is defined as "any decrease in the medical severity of an impairment which was present at the time of the most recent favorable decision that the claimant is disabled or continued to be disabled."  20 CFR § 404.1594(b)(1).  A

determination that there has been such a decrease in medical severity must be based on changes in the claimant's symptoms, clinical signs, or laboratory findings or medical source opinions. *Chumbley v. Shalala,* No. 92-12-VAL (RLH), 1994 WL 774030, at *2 (M.D. Ga. Nov. 22, 1994). When determining if medical improvement has occurred, there is no presumption of continuing disability based upon the previous finding of disability. *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284 (6th Cir.1994), 20 C.F.R § 416.994(b)(1)(vi). *See also* Barbara Samuels, Social Security Disability Claims Practice & Procedure § 30.2 (2d ed. 2007) ("Note that the medical improvement standard does not include any presumption of continuing disability by reason of a prior finding of disability.")

For a reviewing court, the inquiry is first "whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." *Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir. 1983). If so, the factual findings are deemed conclusive. The reviewing court is not permitted to reweigh the evidence or replace the judgment of the Commissioner with its own. *Bloodworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Next, the court must decide whether the Commissioner applied the correct law. Conclusions of law made by the Commissioner are not presumed valid. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991).

The multi-step evaluation process used to determine whether disability benefits should be terminated is as follows:

(1) Whether the claimant is engaging in substantial gainful activity;
(2) If not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(3) If impairments do not meet a listing, whether there has been medical improvement;
(4) If there has been improvement, whether the improvement is related to the claimant's ability to do work;
(5) If there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;
(6) If medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;
(7) If the claimant has a severe impairment, whether the claimant can perform past relevant work;
(8) If the claimant cannot perform past relevant work, whether the claimant can perform other work.

*Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 762-63 (11th Cir. 2011).

## ISSUES

I. **Whether the ALJ properly accounted for all of Plaintiff's limitations in determining Plaintiff's RFC.**

II. **Whether the hypothetical question posed to the VE includes all of the limitations the ALJ included in the RFC.**

### Statement of Facts and Evidence

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of April 8, 2010. (Tr. 28.) The ALJ then found that from April 8, 2010 through April 30, 2011 (the "Disability Period"), Plaintiff had severe impairments of degenerative and discogenic disease of the cervical spine, thoracic and lumbar spine status post fracture and fusion surgery, and depression. (*Id*.) The ALJ further found that during the Disability Period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 29.) The ALJ then

determined that during the Disability Period Plaintiff had the residual functional capacity (RFC) to perform light work, limited by the following restrictions:

> He required an option to alternat[e] between sitting and standing every 30 minutes at his own discretion.  He could frequently climb stairs or ramps, balance, kneel, or crawl; occasionally stoop or crouch; and could never climb ladders, ropes, or scaffolds.  He had to avoid concentrated exposure to hazards.  [Plaintiff] was limited to simple routine job tasks, and could not perform detailed or complex tasks.  Due to his pain, fatigue, and medical appointments, he would have been subject to frequent work absences and would have had difficulty sustaining an ordinary work schedule.

(Tr. 30.)  This RFC assessment was found to prevent Plaintiff from performing any past relevant work as a punch press operator, material mover, and weaver. (Tr. 35.)  Plaintiff was found to be a younger individual on the disability onset date, had at least a high school education, and the ability to communicate in English.  (*Id*.)  Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the Disability Period.  (*Id*.)  The ALJ therefore found Plaintiff disabled during the Disability Period.  (Tr. 36.)

The ALJ then embarked upon the eight-step sequential evaluation process for determining if Plaintiff had medically improved.  The ALJ found that Plaintiff had not developed any new impairments since May 1, 2011, the date his disability ended, and therefore the same severe impairments as noted above.  (*Id*.)  Next, the ALJ noted that Plaintiff's impairments still did not meet or medically equal a Listing.  (*Id*.)  The ALJ then found that Plaintiff had medically improved as of May 1, 2011.  (Tr. 36-37.)  The medical improvement was found to relate to Plaintiff's ability to work because it caused

an increase in his RFC. (Tr. 37.) The ALJ re-assessed Plaintiff's RFC as of May 1, 2011 and found that he can perform light work with the following limitations:

> [H]e needs an option to sit or stand at his own discretion at 30-minute intervals. [Plaintiff] cannot climb ladders, ropes or scaffolds. He can frequently climb stairs or ramps, balance, kneel, or crawl. He can occasionally stoop or crouch. He has to avoid concentrated exposure to hazards. [He] is limited to simple routine job tasks, and cannot perform detailed or complex tasks.

(Tr. 37.) The ALJ found that Plaintiff still could not perform past relevant work, that he remained a younger individual, and his education level remained the same. (Tr. 39.) Finally, considering Plaintiff's age, education, work experience, and RFC, and with the testimony of a VE, the ALJ determined that there have been jobs that exist in significant numbers in the national economy which Plaintiff could perform since May 1, 2011. (Tr. 40.) Therefore, Plaintiff's disability ended on May 1, 2011. (*Id.*)

## DISCUSSION

**I.    Did the ALJ properly account for all of Plaintiff's limitations in determining Plaintiff's RFC as of May 1, 2011?**

In his brief on appeal, Plaintiff asserts that the ALJ erred by "relying on a hypothetical question and RFC assessment that did not fully account for Plaintiff's limitations." (Pl.'s Br. 1, ECF No. 12.) The Court considers the questions of the adequacy of the ALJ's RFC assessment and hypothetical question posed to the VE as separate arguments. The RFC assessment is considered first. The Commissioner responds that there is substantial evidence in the record to support the ALJ's RFC finding that Plaintiff had improved by May 1, 2011 to engage in work. (Comm'r's Br. 7, ECF No. 13.)

As described above, the ALJ began by following the five step sequential analysis prescribed by 20 C.F.R. 404.1520(a). The ALJ found that Plaintiff was disabled as a result of severe impairments of degenerative and discogenic disease of the cervical spine, thoracic and lumbar spine post fracture with fusion surgery and depression with frequent work absences and difficulty sustaining an ordinary work schedule due to pain fatigue and medical appointments. (Tr. 30). The period of disability was found to have begun on the alleged onset date of April 8, 2010. However, the ALJ also found that Plaintiff had experienced medical improvement beginning May 1, 2011 and employed the eight-step sequential analysis to find that Plaintiff's RFC had increased to the extent that he is able to perform light work with restrictions.

Although the severe impairments were found to be the same as during the period of established disability, the ALJ further found that Plaintiff's condition was stable, active recovery from the accident was complete, and less treatment and medication were prescribed. Thus, the ALJ found that the number of absences from work previously assessed as part of the initial disability determination had decreased to the point that Plaintiff can engage in substantial gainful activity. Testimony was elicited from a VE that Plaintiff can work as a ticket taker, ticket seller, and mail clerk within his restricted RFC. Availability of these jobs in the national economy was also testified to by the VE and a finding of "not disabled" was reached for the period beginning May 1, 2011. It is to that second portion of the "partially favorable" decision that Plaintiff assigns error.

Plaintiff asserts that the RFC does not account for all of his limitations. Specifically, he argues that the RFC does not reference cervical spine limitations found in

9

a consultative examination in June 2012.  (Pl.'s Br. 8; Tr. 484-86.)   The functional activity in question is overhead reaching.  (Pl.'s Br. 9.)  While the ALJ discussed this limitation in his written decision, he afforded only "some weight" to the consultative examiner's opinion, finding that the opinion was not consistent with examination notes and was contradicted by the results of a Spurling's test indicating no cervical nerve root compression.  (Tr. 33, 486.)  The ALJ was free to do so because no particular deference is due to a one time consultative examiner.  *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987).

Plaintiff also contends the ALJ's RFC allows for frequent climbing of stairs and ramps although the consultative examiner found him able to climb no more than occasionally.  But the occupations available to Plaintiff as testified to by the VE do not require any climbing according to the Dictionary of Occupational Titles (4th ed. 1991).  Thus, even assuming that there is error by the ALJ in formulating an RFC allowing for "frequent" climbing rather that "occasional" climbing, such error is harmless. (*See Caldwell v. Barnhart*, 261 F. App'x 188 (11th Cir. 2008) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.").  Plaintiff's first contention is meritless.

## II.     Did the hypothetical question posed to the VE include all of the limitations the ALJ included in the RFC?

Next, Plaintiff contends the hypothetical question posed to the VE by the ALJ did not include in its premise his "moderate" difficulties in concentration, persistence and

pace of work. What the ALJ did, however, was to restrict Plaintiff to simple and routine job tasks in posing the hypothetical to the VE, thus adequately accounting for moderate difficulties in concentration, persistence and pace. The restrictions as to the nonexertional limitations were established when the ALJ carried out the psychiatric review technique at steps two and three of the eight-step sequential analysis. In reaching the more detailed RFC assessment at step four, the ALJ reviewed the records of Advantage Behavioral Health and included nonexertional limitations even though Plaintiff's record of treatment was minimal and characterized by treatment notes of congruence of mood, logical thought, intact memory, average intelligence and fair judgment. (Tr. 337-348, 445-47.) Plaintiff points to no evidence in the record to prove otherwise and substantial evidence supports the ALJ's determination that Plaintiff has the RFC to engage in simple routine tasks as stated in the hypothetical question put to the VE. This asserted error has no merit.

## CONCLUSION

WHEREFORE, for the foregoing reasons, it is ORDERED that the determination of the Social Security Commissioner be AFFIRMED.

SO ORDERED, this 7th day of November, 2014.

/s/ Stephen Hyles  
UNTED STATES MAGISTRATE JUDGE